UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:24-cr-146-MMH-MCR

WILLIAM ERVIN DANIELS

## UNITED STATES' SENTENCING MEMORANDUM

On the afternoon of November 16, 2023, William Ervin Daniels was riding in a work truck as he uploaded two videos to an internet chat room on an app. The chat room was called "Da Litl Kidz Gc," and it was a forum for sharing content depicting the sexual abuse of children, for which Daniels served as an administrator. (See Doc. 37 at ¶¶ 9–13). A covert FBI employee saw Daniels's upload, documented it, and the investigation launched. Id. The investigation ultimately revealed that the Defendant's November 16 distribution of child sexual exploitation material was not a one-off occurrence; instead, it was one in a sea of many offenses against children—including a child whom the Defendant sexually exploited.

Four Cyber Tips (one of which dated back to 2014) had been submitted by social media platforms reporting accounts attributed to Daniels for sharing files depicting minors engaging in sexually explicit conduct. Id. at ¶ 8. In December 2023, the Defendant uploaded fifteen videos of the same type of material on a different social media application. Id. at ¶¶ 7–8. His phone was a trove of thousands of images and videos depicting minors engaging in sexually explicit conduct, along with evidence of

his involvement in a multitude of groups devoted to sharing and disseminating child sexual exploitation material—including material targeting infants. See id. at ¶ 13.[1]

Most tellingly, the Defendant underwent two voluntary interviews, one at the time of the search warrants' execution and the other during a polygraph examination. (Doc. 37 at ¶¶ 11, 13). In the first interview, Daniels initially denied using the app that he distributed child pornography on. Id. at ¶ 11. But when confronted with evidence of his account, which included his picture and phone number in the profile, he admitted he used the app and that the group had videos and pictures of "underage kids." Id. In the second interview, which preceded a voluntary polygraph, the Defendant admitted he hid a cellphone his stepdaughter's room, purportedly to watch her pre-puberty development and for any signs of pubic hair growth. Id. at ¶ 14.[2] Once the polygraph began, Daniels followed the same pattern of false denial—initially denying having had any sexual contact with a minor. However, when the examiner informed the Defendant that he did not pass the exam, he ultimately confessed that he had sexually abused his stepdaughter when she was between 8 and 9 years old. See id.

---

[1] A few examples of the groups to which the Defendant belonged included "bebe videos cp de 0 a 3 anos," "BABY INFANT PORN," and "todo CP" with a room description of "0 a 17" and profile picture depicting a prepubescent girl wearing a white leotard, white lace stockings, and red garter belts. These descriptions are located in the Device Review report, which the United States produced to the Defendant and the Probation Office with Bates Labels 000048–56.

[2] The Final Presentence Investigation Report captures a portion of these facts. The United States intends to call Special Agent Waldemar Alicea, who conducted the interview, for testimony regarding the Defendant's admissions.

at ¶ 14. He also admitted he secretly watched her when she showered when she was 19 years old. Id. He also admitted he viewed child sexual abuse material for the last decade. Id.

With the Defendant now adjudicated guilty, the Court faces the question of an appropriate sentence. The Final Presentence Investigation Report (PSR) scores a total offense level of 39, which equates to a guideline imprisonment term of 20 years (240 months) under USSG § 2G2.2. Based on the nature and circumstances of the offense and the Defendant's historical conduct, which demonstrate his longstanding sexual interest in and actions against children, a 20-year imprisonment term is sufficient but not greater than necessary to effectuate the goals of sentencing.

**I.   THE PSR PROPERLY SCORES THE TOTAL OFFENSE LEVEL**

The PSR properly scores the base offense level and applies the appropriate enhancements. (Doc. 37). The Defendant raises two objections to the offense level computation. Specifically, he objects to the application of USSG § 2G2.2(b)(4) in Paragraph 23, which provides a four-level enhancement for the nature of the material involved in the distribution offense. He also challenges the application of USSG § 2G2.2(b)(5) in Paragraph 24, which provides for a five-level enhancement based on the Defendant's pattern of sexual exploiting a minor. Neither objection succeeds.

### a. USSG § 2G2.2(b)(4) – Sadistic, Masochistic, or Violent Material Enhancement

This enhancement applies because one of the videos the Defendant distributed on November 16, 2023, contained a depiction of sadism or violence as contemplated by USSG § 2G2.2(b)(4). Section 2G2.2(b)(4) provides a four-level enhancement when "the offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence; or (B) sexual abuse or exploitation of an infant or toddler." USSG § 2G2.2(b)(4). The commentary states that the guideline applies "regardless of whether the defendant specifically intended to possess, access with intent to view, receive, or distribute such materials." USSG § 2G2.2, commentary (n.4). The guidelines do not define "sadistic," "masochistic," or "depictions of violence." See e.g., United States v. Rogers, 989 F.3d 1255, 1261 (11th Cir. 2021). In the absence of definitions, ordinary meaning controls. See id. at 1261–62.

In United States v. Hall, 312 F.3d 1250, 12662–63 (11th Cir. 2002), the Eleventh Circuit held that an ordinary meaning of "sadistic" can entail "an adult male vaginally or anally penetrating a young child" because such penetration is inherently painful, regardless of whether the child expresses pain. See also United States v. Carroll, 886 F.3d 1347, 1355 (11th Cir. 2018) ("We have held that both adult men's vaginal and anal penetration of children under twelve and pictures of minors in bondage are sufficient to warrant the sadistic conduct enhancement." (citation and internal quotation marks omitted)); United States v. Alexander, 214 F. App'x 880, 882 (11th Cir. 2006) (holding that the district court properly applied enhancement when one of

4

the images "depicted an adult male anally penetrating a boy" and the presentence investigation report stated that the defendant's "computer contained images of adults anally and vaginally penetrating young children."). As charged in Count One, one of the videos that the Defendant admitted he distributed depicts an adult male penetrating a young girl with another child present, and thus under Eleventh Circuit law, portrays sadistic of otherwise violent conduct. Recent review of the video further confirms the child being penetrated by the adult male appears under the age of 12 years old. The United States is prepared to offer into evidence a copy of the video for the Court's review.

Moreover, this video that establishes the enhancement is consistent with other videos found in the Defendant's collection of images and videos depicting minors engaging in sexual activity. Content on the Defendant's phone revealed other photos and videos that satisfy this enhancement's criteria, including those described below:[3]

- **Photo 1**: A color photo that depicts a pre-pubescent female . . . with an adult male's erect penis being pushed into her mouth.

- **Photo 2**: A color photo that depicts a fully nude pre-pubescent female . . . with her legs spread apart to expose her genitalia. The child is laying on her back and an adult man is holding her legs apart. The child has purple bondage cuffs on her wrists. The child's mouth is open and the adult male's penis is on her face.

- **Video 1**: A color video with sound, approximately 54 seconds in length. The female child . . . is naked except for a pair of blue socks. The child appears to be in a bedroom. The room contains a bed with stuffed animals and colorful bedding. An adult male, wearing only a t-shirt, grabs the female child from behind and pushes her

---

[3] These descriptions are located in the Device Review report, which the United States produced to the Defendant and the Probation Office with Bates Labels 000048–56.

- onto a bed. The child attempts to push the man away, but the man grabs her firmly. The child can be heard screaming and crying. Specifically, the child cries "no" and screams for her mother. The child attempts to push the man several times. The man pushes the child onto the bed and penetrates her genitalia with his erect penis from behind while she screams and cries. The child can be seen kicking her feet as she screams.

- **Video 2**: A color video with sound, approximately 50 seconds in length that depicts a fully nude female toddler . . . . The toddler is laying on her stomach on a blue and white checkered blanket. An adult penetrates the toddler's genitalia with his erect penis. At one point, the adult male's hand grabs the toddler's butt and spanks her.

Simply put, the nature of the video that the Defendant distributed as charged in Count One of the Indictment, coupled with other like material discovered on his phone, more than establish this enhancement's application. Thus, the PSR properly applies USSG § 2G2.2(b)(4).

### b. USSG § 2G2.2(b)(5) – Pattern of Abuse Enhancement

The PSR properly scores this enhancement because the Defendant admitted that he repeatedly sexually exploited his stepdaughter when she was a child on at least two occasions. Section 2G2.2(b)(5) provides a five-level enhancement "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." The commentary defines "[p]attern of activity involving the sexual abuse or exploitation of a minor" as meaning "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, **whether or not** the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct."

6

(Emphasis added). Moreover, the commentary defines "sexual abuse or exploitation" as any of the following:

> (A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251(a)–(c), § 2251(d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423;
>
> (B) an offense under state law, that would have been an offense under any such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States; or
>
> (C) an attempt or conspiracy to commit any of the offenses under subdivisions (A) or (B).
>
> "Sexual abuse or exploitation" does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor.

Notably, "[t]his section specifically allows the district court to consider offenses **not** determined to be relevant conduct . . . ." United Sates v. Charniak, 607 F. App'x 936, 939 (11th Cir. 2015) (affirming application of pattern enhancement based on a prior state conviction involving the defendant's sexual abuse of his daughter).

The Probation Officer applied this enhancement based on the Defendant's admissions that he sexually abused his stepdaughter on two occasions when she was between 8 and 9 years old. (Doc. 37 ¶ 23). The United States concurs with the enhancement's application on the same grounds. The Defendant objects to this enhancement on three grounds. First, he contends he made the statements involuntarily and claims that his confession was false. Second, he argues the circumstances of the sexual abuse are too attenuated and substantively different to constitute relevant conduct that the Court may consider at sentencing. Third, he claims

7

the Court may not rely on the commentary for interpreting USSG § 2G2.2(b)(5) post-Dupree. Each challenge fails.

First, the Court can and should consider the Defendant's admissions made before, during, and after the polygraph interview regarding his sexual abuse of his stepdaughter when she was a child. As described above, during the pretest portion of the interview, the Defendant admitted he hid a cellphone in his stepdaughter's room and recorded her to watch her pre-puberty development and for any signs of pubic hair growth. During the interview, he denied any sexual contact with minors, but after the examination portion of the interview ended, the Defendant admitted and signed a written statement where he said that when his stepdaughter was eight or nine years old, he went into her bedroom at his house and "touched her vagina for a short period of time. Most of the time, she had only pants and no panties. I left her bedroom after I finished. I did not masturbate. I did that at least two separate times with approximately a month in between." (See Ex. A). He further said, "When my stepdaughter was approximately 19 years old, she was bathing on the outside shower at our house. I position myself in a way where I could look at her while naked and showering. This happened at least twice." Id. The Defendant made none of these admissions during the actual examination—only during the pre-test and post-interview portions—but nevertheless, they constitute his own statements. Notably, his confession was specific and detailed. The Defendant cites no cases supporting such statements would be excludable under any circumstance.

8

The United States need only prove that the Defendant engaged in a pattern of sexual exploitation by a preponderance of the evidence. See United States v. Gupta, 572 F.3d 878, 887 (11th Cir. 2009). In addition to the statement signed by the Defendant attached to this memorandum, at the sentencing hearing, the United States plans to call the polygrapher, who will testify about the circumstances of the interview and the Defendant's verbal and written admissions.[4]

In considering this matter, the Eleventh Circuit's decision in United States v. Britt, 576 F. App'x 959, 962 (11th Cir. 2014), offers guidance. There, the Eleventh Circuit considered the district judge's application of U.S.S.G. § 2G2.2(b)(5) after hearing from an FBI Agent, who testified at the sentencing hearing about the defendant's statements made during a polygraph examination. Id. The agent testified that the defendant stated during the polygraph that he engaged in appropriate sexual contact with several child and described those interactions with specificity. Id. at 961. At the sentencing hearing, the defendant then testified and denied he ever had sexual contact with minors and recanted his statements made during the polygraph. Id. Weighing the credibility of each witness, the district judge imposed the five-level enhancement based on the evidence presented, despite the defendant's denial of his previous statements. Id. The Eleventh Circuit held that the judge "was entitled to credit the agent's testimony, which was not so inconsistent or improbable on its face that no reasonable factfinder could accept it," and affirmed the pattern enhancement's

---

[4] The United States is not calling the polygrapher as an expert.

9

application. Id. at 962. Notably, in Britt, the district court applied the enhancement when the defendant pled guilty to receiving a visual depiction involving a minor engaged in sexually explicit conduct and possessing an unregistered firearm. Id.

The Defendant's next challenge similarly falls short because the Defendant's sexual abuse of his stepdaughter need not be "relevant conduct" for the enhancement to apply. See Charniak, 607 F. App'x at 939. District courts routinely uphold the application of the pattern enhancement based on sexual abuse by defendants charged with child pornography offenses. See e.g., United States v. McGarity, 669 F.3d 1218, 1259–60 (11th Cir. 2012) ("Although [the defendant's] sexual abuse of his stepdaughter and stepson and three other little girls occurred in the 1970s or 1980s, even such temporally distant behavior may constitute a pattern of activity under § 2G2.2(b)(5)."); United States v. Turner, 626 F.3d 566, 572–73 (11th Cir. 2010) (affirming the application of the pattern enhancement to a defendant convicted of receiving child pornography based on an old conviction for unrelated conduct); United States v. Madden, No. 21-13697, 2023 WL 177108, at *2 (11th Cir. 2023) (affirming pattern enhancement application where district court heard testimony that the defendant, who plead guilty to "charges involving child pornography and an animal crush video," had sex with a minor victim "two or three" times, which satisfied the enhancement). As the Defendant effectively concedes, the Eleventh Circuit has rarely, if ever, applied temporal limitations on the conduct underpinning this enhancement's application.

10

The Eleventh Circuit's decision in United States v. Dugger, No. 21-14010, 2022 WL 2800204 (11th Cir. 2022), squarely opposes the Defendant's argument. Dugger appealed his 188 months' imprisonment sentence for receipt of child pornography, contending the court erred in applying U.S.S.G. § 2G2.2(b)(5). Specifically, the defendant argued that a pattern could not be established under the "ordinary meaning" of the guideline based upon "two instances of conduct against a single minor victim more than fifteen years ago . . . ." Id. at *2. In considering both the guideline language and the commentary, the Eleventh Circuit affirmed the district court's application of the enhancement and stated "we have repeatedly held that conduct unrelated to the offense of conviction, including conduct that occurred in the distant past, can constitute a 'pattern of activity' under § 2G2.2(b)(5)." Id. at *4 (citations omitted).

Simply put, this evidence (through the Defendant's written statement and the polygrapher's anticipated testimony) satisfies that Daniels engaged in a pattern of activity involving the sexual exploitation of a minor. And the application of this enhancement based on this evidence is wholly consistent with Eleventh Circuit precedent that the pattern need not be "relevant conduct" to the charged offense.

The Eleventh Circuit's Dupree decision does not alter this analysis. See United States v. Dupree, 57 F.4th 1269 (11th Cir. 2023). The Dupree Court held that a court should not defer to the Guidelines commentary unless the text of the Guidelines is "genuinely ambiguous." United States v. Penalta, No. 23-13647, 2024 WL 4603297, at *2 (11th Cir. 2024) (finding the term "image" under § 2G2.2 "genuinely ambiguous" under Dupree and affirming the district court's application of the enhancement based

11

on the commentary). Undesigned counsel located no case law post-<u>Dupree</u> analyzing how <u>Dupree</u> applies to § 2G2.2(b)(5).

The text of § 2G2.2(b)(5) is genuinely ambiguous, so it is permissible for the Court to rely on the commentary. "[A] pattern of activity involving the sexual abuse or exploitation of a minor," could have numerous meanings and the guideline text does not define "pattern," "activity," or "involving the sexual abuse or exploitation of a minor." USSG § 2G2.2(b)(5). The guideline is silent as to how many instances establish a "pattern" and what acts constitute "exploitation," a broad term that could involve limitless types of actions against minors. Simply put, these terms are each open for interpretation. Therefore, the Court can and should turn to the commentary for guidance, and indeed, the commentary cabins these terms with specific definitions and parameters consistent with the guideline itself. See <u>Dugger</u>, 2022 WL 2800204, at *4 (11th Cir. 2022) (rejecting the defendant's argument that the commentary to the pattern enhancement is inconsistent with the guideline text). Because the Court may turn to the commentary, the analysis returns to square one. As explained above, the pattern enhancement plainly applies based on the commentary. The Defendant therefore raises no meritorious objection to the enhancement's application.

## II. THIS CASE WARRANTS A GUIDELINES SENTENCE

The § 3553(a) factors call for a 20-year imprisonment term. The Defendant undoubtedly has experienced hardship in his life with the death of his mother and his health conditions. Unfortunately, those experiences do not mitigate the harm he has caused and the risk he poses to the community. The nature and circumstances of the offense he committed, his history and characteristics involving violence against children, along with the need for specific deterrence and to protect the community from his future actions all support a guidelines sentence.

The nature and circumstances of the Defendant's offense are egregious. The five specific offense enhancements capture this, as they are based on the high volume and nature of the material he possessed and distributed, which included prepubescent minors and sadistic violence towards them. (See Doc. 37 at ¶¶ 21, 22, 23, 25, 26). The Defendant belonged to numerous groups on many applications, including Telegram, Signal, and Viber—applications commonly associated with distributing this type of illegal material. This was not merely content that the Defendant happened to discover, but something he sought out and collected, as evidenced by his membership in groups and role as an "administrator" in the group he distributed the charged videos in. Notably, the Defendant's sentencing memorandum downplays his conduct, stating his actions "simply involved the use of a smart phone and frequently used social media applications." (Doc. 39 at 17). But this belies the evidence of the Defendant's pervasive and troubling sexual interest in children. Indeed, in his written statement, Daniels admitted that he viewed child pornography for the last ten years. (See Ex. A). He also

13

admitted in his polygraph interview that he masturbated to child pornography, and last masturbated to it in May 2024. Cyber Tips dating back ten years demonstrate that Daniels distributed this type of content for a long period of time across many platforms.

      Notably, the guidelines range exceeds the statutory maximum sentence of 20 years because it reflects the seriousness of Daniels' offense, coupled with his unique history. The Defendant's confessed sexual abuse and exploitation of his stepdaughter when she was a child indicates that his interest in children extends back closer to 20 years when she was between 8 and 9 years old. Not only did Daniels admit to touching her when she was a child, he also admitted that he secretly filmed her when prepubescent and later watched her shower. Though he claimed his stepdaughter was 19 years old when he voyeuristically observed her, this type of admitted behavior suggests that the Defendant will harm those closest to him to fulfill his sexual interests. Put differently, the Defendant's actions fuel great concern that he is not only likely to recidivate, but also to engage in even more violent conduct towards children in the future, as he has in his past.

      The Defendant urges a downward variance and notes that the average sentence for individuals convicted of trafficking child pornography is 148 months. (Doc. 39 at 16). But this average number of months does not provide an appropriate comparator for when the defendant properly receives an enhancement when he confessed to abusing a child before, thereby, receiving the 5-level pattern enhancement to account

for such conduct. Further, as identified in the same source,[5] a defendant with a prior conviction for sexual abuse or child pornography is subject to a 15-year mandatory minimum penalty and received an average sentence of 236 months, which aligns with Daniels's guideline range and the history of his conduct involving both sexual abuse and child pornography. Therefore, the only way to avoid unwarranted disparities is to sentence the Defendant within the guidelines range.

## CONCLUSION

The PSR correctly calculates the Defendant's guidelines range, and a guidelines sentence is the only appropriate outcome. No reason exists supporting a downward variance. Thus, to achieve the statutory purposes of sentencing, a guidelines sentence of imprisonment would be sufficient, but not greater than necessary.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: *Kelly S. Milliron*
KELLY S. MILLIRON
Assistant United States Attorney
Florida Bar No. 1018917
300 N. Hogan Street, Suite 700
Jacksonville, Florida 32202
Telephone: (904) 301-6300
Facsimile: (904) 301-6310
E-mail: Kelly.Milliron@usdoj.gov

---

[5] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Child_Pornography_FY23.pdf (last accessed on December 31, 2024).

15

**U.S. v. WILLIAM ERVIN DANIELS**        3:24-cr-146-MMH-MCR

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2024, I filed this document in CM/ECF, which will provide a copy to the following:

> Patrick Korody, Esq.
> Counsel for Defendant

*Kelly S. Milliron*
KELLY S. MILLIRON
Assistant United States Attorney